OPINION OF THE COURT
Salvatore J. Módica, J.
The above-captioned two cases are combined solely for the purpose of this memorandum decision, raising a common issue on these two otherwise unrelated mortgage foreclosure actions. They both have a common denominator in that the movants, the mortgagors, seek the appointment of a substitute referee for various grounds. In both of the cases combined for decision, this court’s independent research shows that the Justice, now retired, who appointed both of the referees, selected an attorney as the referee who did not qualify as not being on the part 36 list of eligible fiduciaries.
The importance of the issue, since it is hard to find any reported decisions discussing New York’s institution of a “part 36” list of eligible fiduciaries in several denominated categories, has led to this memorandum decision. This decision demonstrates the pitfalls of going beyond the part 36 list in appointing a fiduciary, such as a referee, although a judge is well within her or his rights in doing so—if done properly, as discussed herein.
Part 36 of the Rules of the Chief Judge (22 NYCRR part 36) governs the following judicial appointments made by justices and judges of the Unified Court System of New York State: guardians; guardians ad litem, including their counsel and assistants; privately paid law guardians where authorized; court evaluators; attorneys for alleged incapacitated persons; court examiners; supplemental needs trustees; receivers; referees, e.g., a referee to sell property—excluding referees who perform quasi-judicial functions such as those who hear and report (CPLR 4201), hear and determine (CPLR 4301), or supervise discovery (CPLR 3104); secondary appointees of guardians and receivers, e.g., attorney, accountant, appraiser, etc.; and certain public administrators and counsel to public administrations in *874 certain regions. (See The Rules of the Chief Judge Part 36: Questions and Answers, available at https://www.nycourts.gov/ ip/gfs/FAQsPart36.pdf.)
In December 2011, New York State’s Commission on Fiduciary Appointments issued an important report (available at https://www.nycourts.gov/ip/gfs/fidcommreport.html). The report’s introduction even candidly indicates that “[o]ver 130 years ago, Benjamin Cardozo’s father, Manhattan Supreme Court Justice Albert Cardozo, was harshly criticized and ultimately forced to leave the bench in large part because of his repeated appointment of relatives and political cronies as fiduciaries.” (Id.) The late Judith S. Kaye, Chief Judge of the New York Court of Appeals, observed: “ ‘[PJublic confidence in the courts is put at risk when judicial appointments are based on considerations other than merit. Simply put, the public must have faith that the courts operate free of favoritism and partiality.’ ” (Id.)
In a beautifully written and scholarly article, Understanding Fiduciary Duty (84 Fla BJ [No. 3] 20, 22 [Mar. 2010]), Florida lawyers John F. Mariani, Christopher W. Kammerer, and Nancy Guffey-Landers, discuss the fiduciary duty:
“The most basic duty of a fiduciary is the duty of loyalty, which obligates the fiduciary to put the interests of the beneficiary first, ahead of the fiduciary’s self interest, and to refrain from exploiting the relationship for the fiduciary’s personal benefit. This gives rise to more specific duties, such as the prohibition against self-dealing, conflicts of interest, and the duty to disclose material facts. Perhaps the most famous description of the duty of loyalty is by Chief Judge Benjamin Cardozo in Meinhard v. Salmon, 164 N.E. 545, 546 (N.Y. 1928): “Many forms of conduct permissible in a workaday world for those acting at arm’s length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior.
“In addition to a duty of loyalty, a fiduciary also owes a duty of care to carry out its responsibilities in an informed and considered manner and to act as an ordinary prudent person would act in the management of his or her own affairs. If the fidu *875 ciary has special skills, or becomes a fiduciary on the basis of representations of special skills or expertise, the fiduciary is under a duty to use those skills” (footnote references omitted).
Aside from Cardozo’s famous statement in Meinhard, made in 1928, for the New York Court of Appeals, the Supreme Court of Florida, one year earlier, in Quinn v Phipps (93 Fla 805, 811, 113 So 419, 421 [1927]), articulated, with equal polish:
“Stripped of all embellishing verbiage, it may be confidently asserted that every instance in which a confidential or fiduciary relation in fact is shown to exist will be interpreted as such. The relation and duties involved need not be legal; they may be moral, social, domestic or personal. If a relation of trust and confidence exists between the parties (that is to say, where confidence is reposed by one party and a trust accepted by the other, or where confidence has been acquired and abused), that is sufficient as a predicate for relief. The origin of the confidence is immaterial.”
The New York State Report of the Commission on Fiduciary Appointments, headed by Sheila L. Birnbaum, Esq., and whose counsel was (now Judge) Lawrence K. Marks, encouraged judges, in making their selections of fiduciaries, to adhere to those listed on the part 36 lists of fiduciaries. The report, in pertinent part, states:
“Judges Should Select Fiduciaries From the OCA List.
“The fiduciary rules should make clear that judges should select fiduciaries from the OCA list. . . .
“In certain situations, however, judges may have reason to appoint a fiduciary who is not included on the list. For example, an individual not on the list may have a particular expertise required in the case or may have some previous involvement with the case or the parties. In these and other limited situations, judges should have authority to appoint someone not on the list, but when they do so they should be required to provide a reason in writing. Appointees who are not on the list, however, should still have to demonstrate that they could qualify for inclusion on the list—that is, that they meet all the criteria for such inclusion. Furthermore, they should be required to make the same filings as are *876 required of those on the list.”
The court commends the Commission’s report in advising judges to stick to the part 36 list of eligible fiduciaries, where any person with the proper qualifications can apply and be placed on the list after meeting the criteria and undergoing training and education. The danger of going beyond the part 36 list is real, even where a judge has complied with the writing required of judges for going beyond the part 36 list. One experienced and highly-regarded jurist learned this lesson the hard way. After writing a justification for appointing a lawyer as a receiver for a judgment debtor, the court subsequently learned that the attorney was suspended indefinitely for reasons other than and not involving the appointment. (Compare Konvalin v Tan Hai Ying, 13 Misc 3d 287, 290 [Sup Ct, Queens County 2006] [praising the lawyer for “outstanding adherence to legal ethics”], with Moray v Koven & Krause, Esqs., 15 NY3d 384, 386 [2010] [identifying lawyer involved in legal malpractice].) Although the court in Konvalin was well-intentioned in making a selection outside the part 36 list and complied with the writing requirement in choosing an individual not on the list, with the benefit of 20/20 hindsight, sticking to the part 36 would have spared that highly regarded jurist and the participants a lot of embarrassment, time, effort, and frustration.
Turning first to Deutsche Bank Natl. Trust Co. v Sidden (index No. 21902/2008), a now retired Justice of this court appointed Dena Orenstein, Esq., as referee. Plaintiff’s counsel in that action reports that numerous attempts to reach Dena Orenstein have been unsuccessful. Since this court believes, wherever possible, in respecting the appointment of eligible fiduciaries made by other jurists, the court engaged in its own research and investigation.
This court, concerning Deutsche Bank Natl. Trust Co. v Sidden (index No. 21902/2008), discovered that attorney Dena Orenstein, although maintaining her registration as a lawyer in this state, is not on the part 36 list of eligible referees for Queens County. Second, the court’s investigation, including the website of nycourts.gov, shows that Dena Orenstein has left no address or contact information. Searches on Google or the Internet have been fruitless. Even on the attorney registration rolls, no contact information for Ms. Orenstein is shown. Plaintiff’s counsel understandably would like to move this action, begun in 2008, to its conclusion. Plaintiff’s counsel, not *877 hearing from Ms. Orenstein, made the present motion for a substitute referee.
Defendant Sidden opposed the motion. Defendant Olioe Sid-den has filed “Objection to Motion to Substitute Referee.” Despite the title of defendant’s document, all the allegations contained therein do not concern the referee, but are a rehash of defendant’s dissatisfaction with the foreclosure remedy. Defendant does not challenge the fact that the referee has failed to respond to plaintiff’s counsel’s inquiries, if indeed Ms. Oren-stein, whose whereabouts remain a mystery, received them.
Turning next to the facts of the second action captioned above, Queen’s Park Oval Asset Holding Trust v Matthews (index No. 21328/2011), the now retired Justice appointed Sandra C. Katz, Esq., as referee. Ms. Katz, like Ms. Orenstein in the other action, is not on the part 36 list of approved fiduciaries. When plaintiff’s counsel sent her a letter advising her of the appointment, dated July 29, 2016, Ms. Katz endorsed the letter, on August 31, 2016, with her own handwritten statement, stating to plaintiff’s counsel: “I do not take referee cases any more [sic].” The motion for a substitute referee thus ensued. Defendants did not submit opposition to the motion.
In the present matter, in the Deutsche Bank case, Ms. Oren-stein was not on the part 36 list, and in the Queens Park Oval Asset matter, Ms. Katz was also not on the part 36 list. In choosing a lawyer not on the list, the retired Justice, as quoted above, was required to write a memorandum decision explaining and justifying the selection. The court’s review of the file shows that this Justice did not write such an explanation for going beyond the list to justify Ms. Orenstein’s and Ms. Katz’s selection. This court thus concludes that the selection of both Ms. Orenstein and Ms. Katz was void ab initio.
This court, in both of the above-captioned actions, having determined and concluded that the now retired Justice did not comply with the proper procedure for selecting both Ms. Oren-stein and Ms. Katz as referees since they are not on the part 36 lists, and were not on the list at such time of their appointment, holds that their appointments were void ab initio. In addition, as discussed, Ms. Orenstein, in Deutsche Bank, cannot be found and did not respond to plaintiff’s counsel’s numerous attempts to reach her, and Ms. Katz, in Queens Park Oval Asset Holding Trust, has expressly declined the appointment.
This court could have taken the expedient route and granted the motions for a substitute referee simply on the basis of one *878 lawyer remaining incommunicado and unreachable and the other lawyer having expressly renounced her selection in writing. In both of the actions, neither plaintiff’s counsel has argued that the appointments of the original referees were void ab initio. Since the appointment of a fiduciary does involve naming a trustee who can be a representative of this court, acting with “[n]ot honesty alone, but the punctilio of an honor the most sensitive” (Meinhard v Salmon, 249 NY at 464), the court has an equal duty and corresponding obligation to be straightforward with the reason for granting the motions of both of the plaintiffs in selecting a substitute referee.
This court, accordingly, grants the motions to appoint a substitute referee in both of the above-captioned actions.
In Deutsche Bank Natl. Trust Co. v Sidden (index No. 21902/ 2008), this court, by order dated January 27, 2017, and entered on February 14, 2017, selected Leslie S. Nizin, Esq., to act in place and instead of attorney Dena Orenstein.
In Queen’s Park Oval Asset Holding Trust v Matthews (index No. 21328/2011), this court appoints Dominic L. Chiariello, Esq., as referee, to act in place and instead of attorney Sandra C. Katz. An order to effectuate the appointment of Mr. Chiari-ello is being issued.
Both Mr. Nizin and Mr. Chiariello are known to this court as honest and well-respected attorneys who will take their appointments seriously as dependable fiduciaries.
In each of the aforementioned two actions, the named substitute referee shall serve as referee with all the powers and duties granted to the individuals first named as referees.